CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/2/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CARLA BEELS SPENCER, *Plaintiff,* v. TOWN OF BEDFORD *Defendant.* | CASE NO. 6:18-cv-31 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

For eight months, the Town of Bedford employed Carla Beels Spencer as a Deputy Chief of Police. Spencer is an openly gay woman. She claims that during her employment her co-workers and superiors demonstrated an aversion to her identity. She alleges this aversion led to discriminatory enforcement of policies and, ultimately, her termination. Accordingly, she has filed claims against the Town of Bedford for violations of Title VII of the Civil Rights Act of 1964, which prohibits "discriminat[ion] against any individual . . . because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a)(1), as well as claims for negligent and intentional infliction of emotional distress. The Town of Bedford has filed a motion to dismiss all claims pursuant to Fed. R. Civ. P. Rule 12(b)(6), arguing that Spencer is not a member of a protected class and failed to state facts sufficient to support any claim.

The Court disagrees, finding that Spencer lodged sufficient factual allegations of sex-based discrimination to support claims of disparate treatment and retaliation under Title VII. However, Plaintiff does not provide sufficient facts to support claims of disparate impact or negligent and intentional infliction of emotional distress. Accordingly, Defendant's motion will be granted in part and denied in part.

1

## I. Facts as Alleged

The Town of Bedford ("Defendant") is a municipality in the County of Bedford that provides law enforcement services through the Town of Bedford Police Department ("Police Department").[1] (Complaint ¶ 7). Spencer ("Plaintiff") began working as a Deputy Chief of Police at the Police Department in January 2016. (*Id.* ¶ 8). At all times during her employment, Plaintiff was open about her sexuality, but "was aware of gossip and speculation within the police department related to her sexual orientation." (*Id.* ¶ 12). During her employment with Defendant, Plaintiff made efforts to "improve the police department's adherence to stated policies," but her attempts "were never meaningfully addressed, and were often ignored" because her co-workers did "not want to report to a gay woman." (*Id.* ¶¶ 16-18).

Plaintiff describes disapproval and resentment within the workplace, claiming that when she gave orders co-workers "did not want to follow," they "would remark, 'well, she's a woman.'" (*Id.* ¶ 18). Specifically, one of her "direct reports, Sargent [sic] Robert Monk," said, "he was a Christian, and that he applied for Plaintiff's job and 'should have gotten it.'" (*Id.* ¶ 19). Plaintiff understood Sgt. Monk's remarks about Christianity to "mean that he did not approve of her sexual orientation." (*Id.* ¶ 19). She "brought her concerns regarding her co-workers' lack of respect and resistance to her authority to Chief Foreman on or about March 15, 2016," but her complaints were ignored. (*Id.* ¶¶ 20-21). The hostility demonstrated by Plaintiff's co-workers was mirrored by her superior, Chief Foreman. She states that Chief Foreman "discussed his reluctance to work with Plaintiff, and his aversion to homosexuals, with church congregants,"

---

[1] For the purpose of lawsuits, the Town of Bedford Police Department is not separate from the Town of Bedford, so all claims against both entities should be treated as against the town only. *See Gardner v. Town of Blacksburg*, No. 7:13cv000054, 2013 WL 2490513, at *2 (E.D. Va. 2013) ("Federal Courts treat claims against Virginia municipal police departments as claims against the municipalities themselves") (citing *Hearn v. Hudson*, 549 F.Supp 949 (W.D.Va. 1982) and *Burnley v. Norwood*, No. 3:10cv264-HEH, 2010 WL 3063779, at *5 (E.D. Va. Aug. 4, 2010)).

and that he had become "uncomfortable working with a gay female employee once Plaintiff became more visible in the community." (*Id*. ¶ 25).

In addition to the discriminatory environment described, sex-based favoritism was demonstrated by a "discriminatory pay scheme . . . [and] preferential treatment." (*Id*. ¶ 15). Despite Plaintiff's "education, experience level, and working conditions [being] consistent with, if not greater than" heterosexual male employees, Plaintiff received a lower salary. (*Id*.). Additionally, Chief Foreman "openly favored heterosexual male co-workers." (*Id*. ¶ 21). These co-workers "were rarely disciplined for workplace infractions, and Chief Foreman often permitted [them] to disobey stated police department policy." (*Id*. at ¶ 22). For example, one investigator was permitted to use a government police car as a personal family vehicle and given extra time to submit receipts. (*Id*. ¶ 23). A separate male lieutenant was not disciplined or investigated when he "failed to deposit approximately $500, earned from a Special Olympics fundraiser . . . and instead kept the money in his office" for more than a year. (*Id*. ¶ 24).

Despite Defendant's alleged willingness to overlook the infractions described above, Plaintiff was "target[ed] for a minor personnel issue stemming from a July 2016 comment she made about a co-worker." (*Id*.) Specifically, "on or about July 8, 2016, Plaintiff and her wife were attending a party" with several uniformed officers from the Police Department. (*Id*. ¶ 28). Plaintiff, observing "several officers, not in uniform, drinking alcoholic beverages heavily and socializing with the . . . uniformed officers," believed it was best not to "fraternize . . . in this reckless situation." (*Id*. ¶¶ 29-30). As Plaintiff prepared to depart the event, she had a "private conversation" with the town's communications director and "made a brief comment critical of the work performance of one of her subordinate officers." (*Id*. ¶¶ 30-31). The following day, "Sgt. Monk filed an administrative complaint against Plaintiff based upon" the described

comment. (*Id*. ¶ 32). The administrative complaint alleged that Plaintiff "had disparaged many members of office personnel after drinking heavily." (*Id*. ¶ 33). Plaintiff claims that none of these allegations were true. (*Id.*)

As a result of Sgt. Monk's complaint, there was an investigation of Plaintiff that was soon elevated to the "high level of an Internal Affairs Investigation." (*Id*. ¶¶ 34-35). Plaintiff states that the "particulars of the complaint and relevant policies at play" did not warrant an Internal Affairs Investigation, but nonetheless resulted in an August 8 meeting with Chief Foreman, who "read a list of alleged work performance deviations on the part of Plaintiff." (*Id*. ¶¶ 35-36). Plaintiff claims that all the allegations were false, specifically those regarding her failure to complete assigned tasks relating to the "National Night Out," "CIT Training," and her "falsification of Virginia Association of Chiefs of Police ("VACP") documents." (*Id*. ¶ 36). Plaintiff, details her efforts and communication with Chief Foreman regarding each of those tasks, and ultimately claims these accusations of poor work performance "were mere pretext to conceal unlawful discrimination." (*Id*. ¶¶ 36-40).

During their August 8 meeting, Chief Foreman commented "that, 'the guys don't like it when people come in here and ask for the Deputy Chief.'" (*Id*. ¶ 41). Plaintiff understood Chief Foreman's reference to "the guys" as an attempt "to highlight the fact that Plaintiff was a gay female, and that the other male officers were not pleased to report to a gay, female Deputy Chief." (*Id*. ¶¶ 41-42). Plaintiff was not given a chance to defend herself at this meeting, nor review the documents used as proof against her. (*Id*. ¶ 43). However, at this point, she reiterated the concerns she had expressed in March, namely "that she thought that she was being treated differently than her colleagues." (*Id*.). Two days later, on August 11, 2016, Plaintiff was put on administrative leave, and her employment was terminated the following day. (*Id*. ¶ 44).

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint; it does not ask which party will ultimately prevail. *Woods v. City of Greensboro*, 855 F.3d 639, 652-53 (4th Cir. 2017) (internal quotations omitted). A complaint must provide more than legal conclusions, but will survive a Rule 12(b)(6) motion where factual allegations and reasonable inferences, accepted as true, state a claim that is plausible on its face. *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court will not accord the presumption of truth to legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *SD3, LLC v. Black & Decker, Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

## III. Title VII Claims

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discharging or otherwise discriminating against any individual "because of such individual's . . . race, color, religion, sex or national origin." 42 U.S.C.A. §2000e-2(a). When stating a claim under Title VII, "a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss," but the factual allegations must "raise a right to relief above a speculative level." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187,190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–515 (2002); *Twombly*, 550 U.S. at 555). This burden is met where the plaintiff "allege[s] facts to satisfy the elements of a cause of action created by [the relevant] statute." *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (holding that the district court erred in applying the *McDonnell-Douglas* framework when analyzing the sufficiency of a complaint at the motion to dismiss stage). Absent direct evidence, the elements of a Title VII discrimination

claim are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.

In this case, Plaintiff's Title VII claims are based on discrimination because of sex (Compl. ¶ 51). Plaintiff argues that she is the member of a protected class because Title VII's prohibition on sex-based discrimination encompasses discrimination based on gender and sexual orientation. (*Id*. ¶ 47). Defendant counters that Plaintiff fails to state a claim because "it is clear that [she] is alleging sex discrimination based on her sexual orientation," which is a characteristic Defendant asserts is excluded from Title VII's protection. (Dkt. 6 (hereinafter "MTD") at 5). Additionally, Defendant argues that, even if Plaintiff's complaint "were construed as addressing a protected class," she fails to establish a *prima facie* case of discrimination. (MTD at 10). Defendant's arguments are largely unpersuasive. Plaintiff, as a woman, is a member of a class protected by Title VII, and has met the pleading requirements for disparate treatment and retaliation. However, Plaintiff has failed to meet the pleading requirements for disparate impact, and that claim will be dismissed.

### A. Membership in a Protected Class

First, the Court turns to Defendant's threshold argument that Plaintiff fails to establish a *prima facie* case because sexual orientation is not a protected class under Title VII. (MTD at 5). Regardless of Title VII's applicability to discrimination based on sexual orientation, Plaintiff has plausibly established that she experienced discrimination because she is a gay *woman*, making her a member of a protected class under Title VII.

Title VII makes it unlawful for employers to base decisions "on a mixture of legitimate and illegitimate considerations." *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Illegitimate considerations are those based on "impermissible classifications," *i.e.*, classifications based on a person's "race, color, religion, sex or national origin." 42 U.S.C.A. §2000e-2(a); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). Accordingly, where a person experiences discrimination because of an impermissible classification such as sex, he or she is a member of a protected group for the purposes of Title VII. *See Wrightson v. Pizza Hut of America*, 99 F.3d 138, 143 (4th Cir. 1996) (holding that a heterosexual male could state a claim for sex discrimination under Title VII).

To support their conclusion that sexual orientation is not an element of "sex" as used in Title VII, Defendant relies heavily on *Wrightson,* a case stating that "Title VII does not afford a cause of action for discrimination based upon sexual orientation." *Wrightson*, 99 F.3d at 143. For present purposes, it is unnecessary to determine whether Title VII prohibits discrimination based on sexual orientation because Plaintiff, as a woman who experienced discrimination based on her gender, sufficiently alleges membership in a protected class.[2] "The unequivocal

---

[2] While the Court does not find it necessary to reach the question of Title VII's application to sexual orientation, it notes that the Fourth Circuit's pronouncement in *Wrightson* regarding the issue has all the hallmarks of dicta. *See Jones v. Virginia Polytechnic and State University,* Civil Action No. 7:17-cv-531 (W.D. Va. Sept. 25, 2018) (Ballou, J.) (questioning the authority of *Wrightson* insofar as it claims Title VII does not protect against discrimination based upon sexual orientation). Later developments further call into question the viability of *Wrightson*'s exclusion of sexual orientation from Title VII. For example, after *Wrightson*, the Supreme Court espoused a broader reading of Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) (stating that "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provision of our laws rather than the principal concerns of our legislatures by which we are governed."). Additionally, the Equal Employment Opportunity Commission recently stated that a claim of discrimination based on sexual orientation was a claim of sex discrimination. *Baldwin v. Foxx*, EEOC Decision No. 0120133080, 2015 WL 4397641, at *5 (July 15, 2015) (concluding that "Complainant's claim of sexual orientation discrimination alleges that [a federal agency] relied on sex-based considerations and took his sex into account in its employment decision."). Ultimately, the Court recognizes this is an unsettled question that has led to a circuit split, and there are currently two

allegation that [s]he was discriminated against 'because of [her] sex,' which, for the purposes of Rule 12(b)(6) must be accepted as true, is alone sufficient to withstand" a motion to dismiss. *Wrightson*, 99 F.3d at 143–144. There is an "unequivocal allegation" where the plaintiff simply alleges that "'because of his sex' . . . he was discriminated against." *Id*. at 43. Here, Plaintiff does just that, claiming that she "would not have [been] terminated, [or] subjected [] to discriminatory pay and discipline . . . but for [her] sex." (Compl. ¶ 56).

Plaintiff's claim is not weakened insofar as she alleges discrimination because she is gay and because she is female. *Wrightson*, 99 F.3d at 143–144 ("As the [Supreme Court] recognized in *Price Waterhouse*, a Title VII cause of action lies even though the discrimination against the employee is not 'solely' because of the employee's sex, as long as the employee's sex was a cause of the discrimination.") (quoting *Price Waterhouse*, 490 U.S. at 241). Since Plaintiff established that she is the member of a protected class, a woman who has experienced discrimination based on her sex, the Court turns to the other elements of her discrimination claims.

---

petitions for writs of certiorari pending before the Supreme Court. *Bostock v. Clayton County Board of Commissioners*, 723 F. App'x 964 (11th Cir. 2018) (upholding a prior ruling that rejected a cause of action for sexual orientation discrimination under Title VII), *cert. pending* No. 17-1618; *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108 (2nd Cir. 2018) (holding that "Title VII prohibits discrimination on the basis of sexual orientation as discrimination because of sex"), *cert. pending* No. 17-1623 (internal quotations omitted); *see also Hively v. Ivy Tech Cmty College of Ind.*, 853 F.3d 339, 340 (7th Cir, 2017) (concluding that "discrimination on the basis of sexual orientation is a form of sex discrimination").

### B. Counts I and III: Disparate Treatment and Sex Discrimination

In Counts I and III of her complaint, Plaintiff alleges that, through the unequal, sex-based implementation of policies, "Defendant violated federal law by permitting a work environment to exist that was discriminatory." (Compl. ¶¶ 54, 76). Title VII prohibits intentional discrimination, known as disparate treatment, which occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotations omitted). "The central focus of a disparate treatment claim is whether a protected characteristic of the employee motivated the employment action taken by the employer." *Barnett v. Tech. Int'l, Inc.*, 1 F. Supp. 2d 572, 577 (E.D. Va. 1998) (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56 (1981)). Both Count I and Count III are based on intentional discrimination in the form of differential treatment because of sex. (Compl. ¶¶ 51, 75). Since both Counts are grounded in Title VII's prohibition on intentional discrimination, and rely on the same legal elements and factual determinations, the Court examines them here as one claim.[3] Plaintiff adequately alleges the elements of intentional discrimination, and Defendant's motion to dismiss will therefore be denied as to both counts.

As addressed above, Plaintiff is a member of a protected class. Additionally, Plaintiff alleges termination by Defendant, (Compl. ¶ 6), and termination plainly qualifies as an adverse employment action under Fourth Circuit precedent. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004). The remaining elements of a Title VII discrimination claim are: satisfactory job performance and differential treatment. *Coleman*, 626 F.3d at 90. Plaintiff alleges facts that support both elements.

---

[3] The Court notes that Plaintiff's response to Defendant's Motion to Dismiss recognizes the parallels in these claims and does not address the merits of Count III. (Dkt. 8 at 14).

Regarding job performance, Plaintiff claims that her "work performance was excellent." (Compl. ¶ 10). Defendant argues that Plaintiff cannot allege her work was satisfactory because of "deviations" that led to an Internal Affairs investigation. (MTD. at 10). While it is "the perception of the decision maker which is relevant, not the self-assessment of the plaintiff," here, Plaintiff directly disputes allegations that her performance was unsatisfactory. *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996); (Compl. ¶¶ 35–40). At this stage, the Court must resolve factual disagreements between the parties in favor of the Plaintiff, and Plaintiff does not merely state disagreement, but provides the necessary factual basis to support her conclusion that the Internal Affairs investigation, and resulting termination, was the consequence of discrimination based on sex. (Compl. ¶¶ 35–45).

Specifically, Plaintiff claims that many of the allegations against her were untrue, (*id*. at ¶ 33), stating that she completed or attempted to complete assigned tasks and disputing Defendant's characterization of her statements. (*Id*. at ¶¶ 33; 38–39). Plaintiff also cites examples indicating that, insofar as she made mistakes, they would not have amounted to dissatisfactory work performance if she were a heterosexual male. (*Id*. at ¶¶ 22–24; 45). By supplying factual details, Plaintiff provides a basis for the plausible conclusion that disciplinary actions brought against her were in spite of, rather than because of, her job performance. *Cf. McCleary-Evans*, 780 F.3d at 585 (upholding a motion to dismiss where the plaintiff failed to allege any facts supporting her conclusion that the decision makers were biased and had predetermined that they would select white candidates).

Plaintiff makes similarly specific allegations regarding differential treatment, satisfying the final element of a disparate treatment claim. She identifies a "discriminatory pay scheme" in which "heterosexual male employees … were paid more than female employees." (Compl. ¶

15). She also identifies heterosexual male employees who committed infractions, but were never disciplined. (*Id*. ¶¶ 23–24). Finally, she provides specific statements that suggest she was not considered equal to those of the opposite sex; quoting Chief Foreman as saying "the guys don't like when people come in here and ask for the Deputy Chief." (Compl. ¶¶ 41–42). These allegations, taken as true, plausibly lead to the conclusion that Defendant "had a discriminatory intent or motive for taking a job-related action." *Ricci v. DeStefano*, 557 U.S. at 577 (2009) (internal quotations omitted).

### C. Count II: Disparate Impact

In Count II of her complaint, Plaintiff alleges a claim of disparate impact under Title VII. (Compl. ¶ 65). Disparate impact exists where policies or practices that are facially neutral "in fact have a disproportionately adverse effect on minorities." *Ricci*, 557 U.S. at 577. To state a claim for disparate impact, a plaintiff must "demonstrate[] that [an employer] uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 USCA § 2000e-2(k)(1)(A). Because Plaintiff fails to meet this standard, Defendant's motion to dismiss as to Count II will be granted.

Disparate impact claims "may in operation be functionally equivalent to illegal intentional discrimination," but the elements must be differentiated from those of a disparate treatment claim. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 977 (1988). To state a claim of disparate impact, a plaintiff must identify a particular, facially neutral employment practice and a resulting pattern of discrimination, but need not provide proof of improper intent. *Brown v. Nucor Corp.*, 785 F.3d 895, 915 (4th Cir. 2015). Where an employee claims that she alone suffered discrimination due to the implementation of the policy, she has not made the required showing that the employment practice caused a "significantly discriminatory impact."

*See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005) (noting that a plaintiff could not prevail on her disparate impact claim unless statistical evidence of disparate impact was admissible) (citing *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990)).

Plaintiff does not claim that Defendant's pay scheme and disciplinary policies were discriminatory on their face, satisfying the neutral policy element of the claim. However, she fails to show that these practices had the necessary discriminatory impact. She claims that *she* "was not paid compensation equal to that paid to heterosexual male employees of equal skill, effort, and responsibility" and that *she* was subject to discriminatory discipline because of her sex. (Comp. ¶¶ 64; 68). These allegations describe implementation that was discriminatory as to Plaintiff, but a *prima facie* case of disparate-impact liability is "essentially, a threshold showing of a significant statistical disparity." *Ricci*, 557 U.S. at 587. A single affected individual proves no such disparity, and Plaintiff gives no other indication that the practices generally "fall more harshly on one group than another" or have a wholly "disproportionately adverse effect on minorities." *Int'l Broth. Of Teamsters v. U.S.*, 431 U.S. 324, 336 n. 15 (1977); *Ricci*, 557 U.S. at 577.

Plaintiff claims that her heterosexual male counterparts were paid more than female employees, "rarely disciplined for workplace infractions," and "often permitted …to disobey stated police department policy." (Compl. ¶¶ 15, 22). While these allegations suggest intentional discrimination, there are no facts that support the required disproportionately adverse effect on a minority group. (*See* Compl. ¶ 27 (claiming that Plaintiff was targeted for minor personnel issues because Chief Foreman no longer wanted to work with a gay female Deputy

Chief)). For that reason, Plaintiff fails to state facts that could plausibly allege a claim of disparate impact, and Defendant's motion will be granted as to Count II.

### D. Count IV: Retaliation

Plaintiff's final claim under Title VII is one of impermissible retaliation. Title VII prohibits employers' retaliation against employees "because the employee has opposed any practice made an unlawful employment practice by Title VII, or because he has made a charge, testified, assisted, or participated in any manner an investigation, proceeding, or hearing under Title VII." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (quoting 42 U.S.C.A. § 2000e-2(a)) (internal quotations omitted). As with a claim of discrimination under Title VII, a plaintiff alleging retaliation must plausibly allege facts that support the elements of the claim. *Coleman*, 626 F.3d at 190. The elements of a retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). Plaintiff alleges facts that plausibly establish these elements, and Defendant's motion to dismiss as to Count IV will be denied.

First, an employee has engaged in protected activity where she has "'complain[ed] to superiors about suspected violations of Title VII.'" *Id.* (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)). However, to warrant protection under Title VII, "the employee's perception of a violation must be 'objectively reasonable' under the circumstances known to her." *Id.* Second, it "is patently obvious and undisputed that termination is a materially adverse action," so there is no need to discuss that requirement further. *Id.* Finally, a plaintiff does not need to show that "protected activities were but-for causes of the adverse action" when establishing a *prima facie* case of retaliation. *Id.* (citing *Foster v. University of*

*Maryland-Eastern Shore*, 787 F.3d 243, 251 (4th Cir. 2015) (holding that the but-for causation test does not apply to the *prima facie* stage, but the pretext stage of the *McDonnell Douglas* framework). At the motion to dismiss stage, causation can be established by showing that the employer "understood or should have understood the employee to be engaged in protected activity and . . . took adverse action against the employee soon after becoming aware of such activity." *Id.* (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989); *Burgess v. Bowen*, 466 Fed. App'x 272, 282 (4th Cir. 2012)). To properly allege that an employer understood the employee to be engaged in protected activity, a plaintiff must allege that the "relevant decision maker" who undertook the alleged adverse action, had knowledge of the plaintiff's protected activity. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (deeming employer's knowledge as "absolutely necessary" in Title VII retaliation case).

Here, Plaintiff alleges that she made multiple complaints to her supervisor, Chief Foreman, about discrimination based on sex. For example, after alleging that co-workers pointed to her sex as a reason to refuse her orders, she states that "she brought her concerns regarding her co-workers' lack of respect" to Chief Foreman. (Compl. ¶¶ 18–21). Some months later, Plaintiff again "complained about her treatment and indicated that she thought that she was being treated differently than her colleagues." (Compl. ¶¶ 41-43).

Defendant claims that, because these complaints were tied only to sexual orientation, there could be no "objectively reasonable" belief that Plaintiff was participating in protected activity. (MTD at 16). But Plaintiff made complaints, at least in part, based on discrimination because of sex, specifically noting that she was treated with a lack of respect because "she's a woman" and that she was not seen as one of "the guys" (Compl. ¶¶ 18, 42). Since Plaintiff's

14

claims were sex-based, the belief that she was engaging in protected activity is reasonable. Taking these factual allegations as true, such an action should have alerted Defendant to Plaintiff's engagement in protected activity. *See also Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (finding that, due to the circumstances surrounding an employee's complaint, her employer should have known she was engaging in protected activity).

Turning to causation, Plaintiff's termination occurred only two days after her second complaint regarding discrimination. (Compl. ¶ 43). This close temporal proximity supports an inference of causation.[4] *See Foster*, 785 F.3d at 253 (finding that temporal proximity tended to show causation where plaintiff was terminated one month after her second complaint regarding sexual harassment); *King v. Rumsfeld*, 328 F.3d 145, 151 & n. 5 (4th Cir. 2003) (finding that a two-and-a-half month gap between protected activity and an adverse employment action was sufficiently narrow to establish the causation prong within the context of that case). Additionally, the allegations indicate that Defendant's employee who had knowledge of Plaintiff's protected activity was the same person who fired her. Plaintiff alleges that her complaints were issued directly to Chief Foreman and that it was also Chief Foreman who "placed Plaintiff on administrative leave on August 11, 2016, and terminated [her] employment one day later." (Compl. ¶¶ 43–44); *See Dowe*, 145 F.3d 653, 657 (finding that, where the relevant decision maker was unaware of the protected activity, the plaintiff could not establish

---

[4] Bedford argues that this temporal proximity does not demonstrate the but-for causation necessary to establish a retaliation claim because Plaintiff was already under investigation for performance-related issues. (MTD at 17). However, Bedford does not cite the correct standard. At this point in the litigation, Plaintiff only has to plausibly establish the elements of Title VII's statutory requirements. *Coleman*, 626 F.3d at 190. Accordingly, she need only meet the "less onerous" causation requirements required at this stage. *Foster*, 787 F.3d at 251. The but-for causation prong is appropriately applied at the pretext stage of the *McDonnell Douglas* analysis, which is not reached when analyzing the sufficiency of a complaint. *McCleary-Evans*, 780 F.3d at 588.

the necessary causal connection between her activity and her termination). For these reasons, Defendant's motion to dismiss regarding Count IV will be denied.

## IV. State Law Claims

In addition to her claims under Title VII, Plaintiff alleges that Defendant violated state law through the intentional and negligent infliction of emotional distress. Plaintiff fails to allege facts sufficient to state either claim. Accordingly, Defendant's motion to dismiss will be granted as to both state law claims.

### A. Count V: Intentional Infliction of Emotional Distress (IIED)

To state a claim for IIED, the plaintiff must plead (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) the resulting emotional distress was severe. *Rose v. Centra Health, Inc.*, 2017 WL 3392494 (W.D.V.A. 2017) (citing *Almy v. Grisham*, 273 Va. 68, 77 (2007). Because Plaintiff fails to allege facts sufficient to satisfy the elements of this claim, Defendant's motion to dismiss will be granted.

As a baseline, IIED claims are disfavored in Virginia, and the alleged conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Almy*, 263 Va. at 77–79. Additionally, the plaintiff must sufficiently allege that the defendant knew or should have known his actions would result in "emotional distress so severe that no reasonable person could be expected to endure it." *Bryan v. Fultz*, 2009 WL 334441 at *1 (E.D. Va. 2009) (citing *Russo v. White*, 241 Va. 23, 27 (1991)). In this case, Plaintiff summarily concludes that Defendant's actions were outrageous and reckless, but does not provide facts that

support these contentions. (Comp. ¶¶ 98–100). Moreover, facts worse than these have been found not to be outrageous as a matter of law. *E.g. Cobbs v. First Transit Company*, No. 6:16cv00015, 2016 WL 7336562 (W.D. Va. 2015) (holding that intentional intimidation was "far from what a reasonable person would call outrageous or intolerable."). Finally, Plaintiff provides no facts to support that Defendant knew or should have known severe emotional harm would result from their actions.

Even if Plaintiff had pled such facts, she has not suffered emotional distress so severe that it caused extensive medical treatment or prevented her from carrying out the tasks necessary to maintain a relatively normal life. *Compare. Bryan* at *3 (holding that even where the plaintiff sought counseling and her marital life was disrupted, she did not suffer severe emotional distress because "she otherwise maintained a relatively normal life.") *with Almy* 273 Va. at 80 (finding the requisite emotional distress where the plaintiff alleged that the defendant's actions caused the need for significant counseling and "rendered her functionally incapable of carrying out any of her work or family responsibilities."). Because Plaintiff failed to state factual allegations supporting any element of this claim, Defendant's motion to dismiss will be granted as to Count V.

### B. Count VI: Negligent Infliction of Emotional Distress (NIED)

Plaintiff fails to allege sufficient facts to establish an NIED claim. In order to establish NIED, a plaintiff must "sufficiently allege a 'clear and unbroken chain of causal connection' between a physical injury which 'was the natural result of fright or shock proximately caused by [the defendant's] negligence'" *Lucas v. Henrico County School Bd.*, 822 F. Supp. 2d 589, 609 (E.D.Va. 2011) (quoting *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125 (2000)). Plaintiff summarily concludes: "the emotional distress was so severe as to physically harm

Plaintiff, resulting in the need for professional medical treatment." (Compl. ¶ 109). Plaintiff reiterates the psychological symptoms listed in her IIED claim, but does not provide any specifics about physical injuries, much less any information that would plausibly prove a causal connection between emotional distress and her alleged injury. Ultimately, Plaintiff fails to provide any facts plausibly suggesting that her allegations are more than a formulaic recitation of the elements of the cause of action, and this is insufficient to state her claim. *Twombly* 550 U.S. at 555 ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation."). Accordingly, Defendant's motion to dismiss as to Count VI will be granted.

V. **Conclusion**

For the forgoing reasons, Defendant's motion to dismiss will be granted in part and denied in part. The motion will be granted as to Plaintiff's claims of disparate impact and negligent and intentional infliction of emotional distress, Counts II, V, and VI. The motion will be denied as to Plaintiff's claims of retaliation and intentional discrimination, Counts I, III, and IV.

An appropriate order will issue, and the Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this  2nd  day of November, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE