CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
05/23/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CARLA BEELS SPENCER,<br><br>       *Plaintiff,*<br><br>v.<br><br>TOWN OF BEDFORD<br><br>       *Defendant.* | CASE NO. 6:18-cv-31<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Carla Beels Spencer ("Spencer") alleges that the Town of Bedford ("the Town"), terminated her employment in violation of Title VII of the Civil Rights Act of 1964, which prohibits "discriminat[ion] against any individual . . . because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a)(1). In November 2018, this Court granted in part and denied in part the Town's motion to dismiss, upholding Spencer's claims grounded in intentional discrimination and impermissible retaliation. (Dkt. 23). The Town has now filed a motion for summary judgment, arguing that Spencer fails to establish a *prima facie* case as to any of her remaining claims and that she fails to rebut the Town's non-discriminatory reason for her termination. (Dkt. 27). For the reasons that follow, the Court finds that Spencer fails to show that the Town's legitimate reason for termination is pretext for discrimination. Thus, the Town's motion will be granted.

           **I.**   **Facts**

  Spencer was hired as the Bedford Police Department's ("the Department") Operations Lieutenant in January 2016. (Dkt. 28 at 1–2). Operations Lieutenant is a supervisory position "established to assist the Police Chief with the overall management and supervision of the Police Department." (Dkt. 28-6 at 1). This position was created as the result of the reorganization of

1

the Department, and Spencer was the first to serve in this role. (Dkt. 28 at 2). As Operations Lieutenant, Spencer was one of two lieutenants reporting directly to Police Chief Foreman, the highest ranking officer in the department, and she was expected to "act in the Chief's capacity when assigned during absences of the Chief." (Dkts. 28-6 at 1–2; 28-4 at 8, 16 ("Foreman Dep.")).

Prior to being hired by the Town, Spencer was employed by the city of Salem as the Salem Police Department's accreditation manager. (Dkt. 28-6 at 1–2). While serving in that capacity, Spencer aided Chief Foreman with the Department's accreditation efforts. (*Id*. at 2). After working with Spencer in her role as accreditation manager, Chief Foreman "encouraged [her] to apply for the position [of Operations Lieutenant for the Town], and 'actively recruited' her," even extending the application deadline to allow her time to apply. (*Id*. (quoting Dkt 28-1, at 22–24 ("Spencer Dep."))). Chief Foreman interviewed two people for the position, Spencer and a male candidate, ultimately hiring Spencer. (*Id*. at 3). Chief Foreman was aware of Spencer's gender and sexuality when he recruited and hired her. (*Id*. (citing Spencer Dep. at 47, 55; Foreman Dep. at 19–20)).

As the Operations Lieutenant, Spencer was meant to oversee the patrol division and implement administrative changes, but people in the Department were resistant to her attempts to do so. (*See* Spencer Dep. at 32, 47–52, 58–59, 63, 100–01, 156–57, 169). Specifically, Spencer states that the people in the Department "did not like change", (*id*. at 47), and that "as [she] did [her] job . . . they became frustrated." (*Id*. at 63). Spencer further states that she heard "rumblings" that people in the department were dissatisfied with her. (*Id*. at 57–59). Specifically, Sergeants Monk and Brooke, two of the officers reporting to Spencer, made it clear that they "didn't like being told what to do by a female, and especially one that had a wife."

(*Id*.). Prior to her termination, Spencer did not formally complain to Chief Foreman regarding the sergeants' resistance based on her gender. (*Id*. at 155–58). Spencer did relay the feeling that subordinate officers were resistant to her because she was female, "but [she] felt at that time it was just part of the process." (*Id*. at 157). Chief Foreman states that he was not aware of any issues with Spencer due to her gender. (Foreman Dep. at 57).

Spencer did not experience any disciplinary action or receive any reprimands until July 2016. (Dkt. 39 at 12). She claims the "discriminatory targeting" culminated on or about July 8, 2016, when she brought her wife to a party where uniformed officers were in attendance. (*Id*.). At that event, Spencer made what she describes as "an offhand comment" about a subordinate officer, Mr. Boucher, to a Bedford County employee. (*Id*. at 13). This comment resulted in Boucher making an internal affairs complaint directly to Chief Foreman. (Foreman Dep. at 31). In making the complaint, Boucher told Chief Foreman that Spencer had called him a "fucking idiot" in front of two individuals, including an officer who was subordinate to Boucher. (*Id*. at 33). Boucher provided text messages to support his claim. (*Id*.). After receiving the complaint, Chief Foreman notified Spencer and interviewed the people involved. (*Id*. at 37). Chief Foreman states that at least three people corroborated "that derogatory statements were made," and that this was the first time he had encountered a superior officer making derogatory statements about a subordinate. (*Id*. at 38).

During the investigation into this comment, other issues with Spencer's performance came to light. (*Id*. 37–38). First, Chief Foreman had directed Spencer to assign patrol officers to attend two events, a Crisis Intervention Training in Lynchburg and a local back-to-school event, both of which were cancelled because of her failure to assign officers. (Dkt. 28 at 5–6). Second, Spencer's discussions with others in the Department regarding a K-9 unit were seen to

undermine Chief Foreman's authority. (Foreman Dep. 41–43). Third, Spencer failed to complete her responsibilities relating to the National Night Out, an annual community event that the Department had previously participated in. (*Id*. at 43–44). Finally, and most significantly according to Chief Foreman, Spencer had not followed through on the Department's National Law Enforcement Challenge ("NLEC") application, and she lied to the Chief about her efforts. (Dkt. 28 at 7). Spencer argues that "none of the alleged performance issues – specifically the purported discrepancy with the NLEC documents – were intentional, or stemmed from a place of dishonesty." (Dkt. 39 at 14)

Chief Foreman cites Spencer's dishonesty surrounding the NLEC application as the reason for her termination. (Foreman Dep. at 25–26). Chief Foreman asked both Spencer and the organization in charge of NLEC to provide copies of the application submitted by the Department. (Dkt. 28 at 7). He received a set of documents from Spencer and a set from the organization, but the two sets did not match. (*Id*.). Upon further investigation, the Town's Information Technology ("IT") Director found that the documents Spencer had attached to the NLEC application were not the ones she provided to Chief Foreman. (*Id*.). The IT Director also failed to find any indication that the documents Spencer gave Foreman were created before Foreman requested them. (*Id*. at 8). Chief Foreman spoke to Spencer regarding these discrepancies at an August 8 meeting. (Dkt. 39 at 14). Spencer claimed it was a mistake, but the evidence led Foreman to conclude that Spencer had lied to him about her efforts regarding the NLEC application. (*Id*. at 14, 19). Chief Foreman maintains that it is because of dishonesty that he issued Spencer's termination notice on August 12, 2016. (Dkt. 28 at 9).

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) states that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

## III. Analysis

This Court previously found "that Spencer lodged sufficient factual allegations of sex-based discrimination to support claims of disparate treatment and retaliation under Title VII" under the motion to dismiss standard. (Dkt. 22). However, at the motion for summary judgment stage, Title VII claims based on indirect evidence are examined under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case. *Id*. at 802. If a plaintiff makes out a *prima facie* case, "[t]he burden then must shift to the

employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant provides such a reason, then the burden shifts back to the plaintiff to show that the reason is a pretext for discrimination. *Id*. at 803. The Town argues that Spencer fails to meet her burden at both the first and third phase of the *McDonnell Douglas* analysis. The Court will first turn to Spencer's ability to establish a *prima facie* case as to her remaining claims.

1. **Discrimination Claims**

In Counts I and III of her complaint,[1] Spencer alleges that, through unequal, sex-based implementation of policies, the Town "violated federal law by permitting a work environment to exist that was discriminatory." (Dkt. 1 ¶¶ 54, 76). Title VII prohibits intentional discrimination, known as disparate treatment, which occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotations omitted). "The central focus of a disparate treatment claim is whether a protected characteristic of the employee motivated the employment action taken by the employer." *Barnett v. Tech. Int'l, Inc.*, 1 F. Supp. 2d 572, 577 (E.D. Va. 1998) (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56 (1981)). "A plaintiff pursuing a Title VII discrimination claim may either offer direct evidence of discrimination or, using indirect evidence, may rely on the burden-shifting framework" provided in *McDonnell Douglas*. *Atkins v. Holder*, 529 F. App'x 318, 320 (4th Cir. 2013) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

At the first step of the *McDonnell Douglas* framework, Spencer argues that she has met her *prima facie* burden of showing: "(1) membership in a protected class; (2) satisfactory job

---

[1] Spencer's response to the Town's motion for summary judgment notes that "these claims rely on the same legal elements and factual determinations," (dkt. 39 at 17), the Town and the Court agree. (*See* Dkts. 28 at 10, 22 at 9). Thus, these claims will be analyzed together.

performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187,190 (4th Cir. 2010) (internal citations omitted). There is no dispute that, as a woman who claims she has experienced discrimination based on her gender, Spencer is a member of a protected class. (*See* Dkt. 22 at 8). Similarly, termination plainly qualifies as an adverse employment action. *Jones v. Constellation Energy Projects & Servs Group, Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015). However, the Town argues that Spencer failed to establish the second and fourth elements of a *prima facie* case of discrimination: satisfactory job performance and disparate treatment. For the reasons discussed below, the Court disagrees.

First, Spencer claims that her work was satisfactory prior to the "minor personnel issue concerning an offhand comment she made about a co-worker in July of 2016." (Dkt. 39 at 12). While Chief Foreman identifies some issues with Spencer's work performance, he agrees that performance-related issues were not the ultimate cause of Spencer's termination. (Foreman Dep. at 25). Thus, the Court must conclude that Spencer has established satisfactory job performance.

Second, Spencer argues she experienced disparate treatment in the form of favoritism and leniency towards the Department's male employees "with regard to stated disciplinary policies and procedures." (Dkt. 39 at 8–9). The Town argues that the incidents Spencer cites as comparisons are "not identical to Lt. Spencer's situation."[2] (Dkt. 28 at 15). Spencer alleges disparate treatment based on "minor personnel issues," (dkt. 39 at 12), and provides comparators that, while not identical, have "enough common features between the individuals to allow for a

---

[2] Spencer does allege a pay disparity between her and Lieutenant Walker, a male in a similar position, (dkt. 39), but his salary increased prior to Spencer's employment "because of his outstanding performance during a transitional and challenging time for the police department." (Dkt. 28-41). Spencer does not refute this reasoning, stating only that it is evidence of disparate treatment. (Dkt. 39 at 29). Thus, the Court will not further analyze allegations of pay disparity.

meaningful comparison." *Haywood v. Locke*, 387 F.App'x 355, 359–60 (4th Cir. 2010) (internal quotations omitted); *see* dkt. 39 at 9–11 (detailing how male employees' minor infractions were handled by Chief Foreman). Accordingly, Spencer has met her burden to establish each element of a *prima facie* case of discrimination.

2. **Spencer's Retaliation Claim**

In Count IV of her complaint, Spencer alleges that she was "terminated and targeted within short temporal proximity to, and in retaliation for, complaining about workplace discrimination." (Dkt. 1 ¶ 91). Title VII prohibits employers' retaliation against employees "because the employee has opposed any practice made an unlawful employment practice by Title VII, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (quoting 42 U.S.C.A. § 2000e-2(a)) (internal quotations and alterations omitted).

As with her discrimination claims, "[t]o prevail on her retaliation claim, [Spencer] must satisfy the three-step proof scheme established in *McDonnell Douglas*." *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 258 (4th Cir. 1998). Accordingly, Spencer must establish a *prima facie* case of retaliation by showing: "(1) that [she] engaged in protected activity, (2) that an adverse employment action was taken against [her], and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro Washington Airports Auth.,* 149 F.3d 253, 258 (4th Cir. 1998). The Town argues that Spencer did not engage in protected activity, and thus fails to establish a *prima facie* case.

An employee has engaged in protected activity where she has "'complain[ed] to superiors about suspected violations of Title VII.'" *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th

8

Cir. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)). To warrant protection under Title VII, "the employee's perception of a violation must be 'objectively reasonable' under the circumstances known to her." *Id.* To be considered protected activity, a complaint need not explicitly detail the issues or be formally presented. *See Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (finding that the plaintiff had engaged in protected activity where she "twice complain[ed] of harassment" even though she did not detail the incidents or explicitly describe the harassment as sexual).

Here, Spencer states that during her conversations with Chief Foreman, he commented "that he knew it was tough with the guys that were sergeants, that they didn't like change." (Spencer Dep. at 157). Spencer chose not to make a formal complaint "but [she] kept [Chief Foreman] in the loop as to some of the things [the sergeants] would do." (*Id.*). This included relaying to Chief Foreman the sergeants' dissatisfaction with "having a female" in charge. (*Id.*). Spencer's only formal complaint occurred after her termination. (*See* Spencer Dep. at 155–56). Given that at least some of Spencer's complaints were sex-based, Spencer had an "objectively reasonable belief" that she was engaging in protected activity, and the Town should have been alerted to that fact. *Strothers*, 895 F.3d at 327. Furthermore, Chief Foreman makes it clear that oral complaints warrant serious consideration, as an oral complaint prompted him to open the investigation into Spencer's behavior. (*See* Foreman Dep. at 33, 37). Accordingly, Spencer has established that she engaged in protected activity when she complained to her superior of discrimination based on her gender.

Again, there is no dispute that termination is an adverse action, and neither party offers arguments regarding the final element of retaliation, a causal link. The Court notes that there are several factors to consider in determining whether a causal link exists. *See Jones v. Best Buy*, No. 6:16-cv-00004, 2016 WL 6471256, at *3 (W.D.Va. Nov. 1, 2016). These include the knowledge of the person initiating the adverse employment action, the temporal gap between protected activity and the adverse action, disparate treatment, and the consistency of the reasoning given by the employer.

9

*See Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006); *Jones*, 2016 WL, at *3. These factors weigh slightly in favor of Spencer, but the Court need not complete an exhaustive analysis at this point. Instead, "the Court can at this stage assume [Spencer] establishes a *prima facie* case because [the Town] has established legitimate reason for her termination." *Nzabandora v. University of Virginia*, No. 3:17-cv-00003, 2017 WL 4230509, at *6 (W.D. Va. Sept. 22, 2017).

### 3. Legitimate, Non-Pretextual Reasons for Termination

Since Spencer establishes a *prima facie* case as to each of her claims, the burden shifts to the Town to articulate a "legitimate, nondiscriminatory reason for" terminating her. *McDonnell Douglas*, 411 U.S. at 802. The Town meets this burden, stating that "dishonesty concerning the NLEC application is what led the Chief to terminate Spencer's employment," not discrimination or retaliation. (Dkt. 28 at 9). Indeed, Spencer's termination notice details this incident and notes a "Group 3 offense" (falsification of a record). (Dkt. 127-37). Spencer counters that "the Town's asserted reason was simply a smokescreen used to camouflage its true discriminatory intentions."[3] (Dkt. 39 at 34).

Since the Town has met its burden of proffering a legitimate reason for Spencer's termination under the third prong of the *McDonnell Douglas* framework, Spencer must show that this reason is pretext for discrimination, "that is, that [it was] not the true basis of her termination and that discrimination was an actual reason." *Nzabandora*, 2017 WL, at *6 (citing *Baldwin v. England*, 137 F. App'x 561, 564 (4th Cir. 2005)). Spencer "'may not recast an employer's legitimate, non-discriminatory reason or substitute [her] business judgment for that of the employer, but must instead meet each reason head on and rebut such reason.'" *Id*. (quoting

---

[3] The arguments presented by the Town and Spencer at this stage are identical for both the discrimination and retaliation claims. Thus, the Court undertakes a single analysis of the second and third prongs of the *McDonnell Douglas* framework.

10

*Monk v. Potter*, 723 F. Supp. 2d 860, 881 (E.D. Va. 2010), *aff'd sub nom.*, *Monk v. Donahoe*, 407 F.App'x 675 (4th Cir. 2011)). Additionally, where, as here, "the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991).

Spencer argues that the circumstances surrounding her termination "strongly indicate that her dismissal was pretextual" and that the facts she presents are sufficiently egregious to overcome the *Proud* inference.[4] (Dkt. 39 at 24, 28–29). However, the reasoning in *Proud* applies equally to this case. There, the Fourth Circuit stated that the same individual "was responsible for the hiring and firing of [the plaintiff] within a six-month time frame, and the evidence of [the plaintiff's] enumerated job deficiencies in a supervisory position makes any inference of discrimination unwarranted." *Proud*, 945 F.2d at 798. Here, it is undisputed that Chief Foreman was responsible for both hiring and firing Spencer within an eight month time frame. Furthermore, there are multiple work performance issues clearly documented in Spencer's termination notice, (dkt. 127-137), and, finally, Spencer was one of two lieutenants in a supervisory position reporting directly to Chief Foreman. Accordingly, the "compelling nature of the inference arising from facts such as these" makes this case "amenable to resolution at an early stage." *Proud*, 945 F.2d at 798.

---

[4] In its memorandum opinion granting in part and denying in part the Town's motion to dismiss, this Court upheld Spencer's claims because, "as a woman who experienced discrimination based on her gender," she sufficiently alleged membership in a protected class. (Dkt. 22 at 7). The Court did not find it necessary to reach the question of Title VII's application to sexual orientation, and the parties chose to proceed based on the theory that Spencer experienced discriminatory treatment because she is a female. Accordingly, to the extent that Spencer relies on evidence of discrimination based on sexual orientation, such evidence does not advance her case as it is currently before the Court.

With this "powerful inference" in mind, the Court turns to the "ultimate question" of whether discrimination motivated the employer. *Id*. Importantly, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Tech. Applications & Service Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (internal quotations omitted). Based on the evidence before him, the decision maker in this case, Chief Foreman, determined that Spencer had been dishonest regarding the NLEC application. The Town supports this contention with copies of contradictory emails, (dkt. 28-30), as well as a declaration of the Town's IT Director. (Dkt. 28-33). The IT Director's declaration states that Spencer did not reply to emails from NLEC inquiring whether Spencer had additional documents for the NLEC application. (*Id*.). The Director's declaration goes on to state that an investigation of Spencer's computer did not provide any evidence that the documents Spencer gave to Chief Foreman existed before he requested them. (*Id*.). Based on this information, Chief Foreman reached the conclusion that Spencer was dishonest.

Spencer does not provide any evidence aside from her own testimony to rebut Chief Foreman's conclusion, taking the position that any discrepancy was "an unintentional paperwork mistake." (Dkt. 39 at 20). This simply proves "the unexceptional fact that she disagrees with the outcome of [the Town's] investigation." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013). Such disagreement is not sufficient to show that the Town's "decision to fire her for falsifying her records was dishonest or not the real reason for her termination." *Id*.

Ultimately, Spencer's "own opinions and conclusory allegations alone do not have sufficient 'probative force to reflect a genuine issue of material fact.'" *Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 525 (D. Md. 2004) (quoting *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988)). Thus, because Spencer fails to show that the Town's legitimate reason for

her termination was pretext for discrimination, the Town's motion for summary judgment will be granted as to all claims.

## IV. Conclusion

For the forgoing reasons, the Town's motion for summary judgment will be granted. An appropriate order will issue, and the Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 23rd day of May, 2019.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE